Stephen Montoya (#011791)
**Montoya, Lucero & Pastor, P.A.**
3200 North Central Avenue, Suite 2550
Phoenix, Arizona 85012
602-256-6718 (telephone)
602-256-6667 (fax)
stephen@montoyalawgroup.com

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Edit Villalobos,<br><br>Plaintiff,<br><br>vs.<br><br>Basis Educational Group, LLC,<br><br>Defendant. | No.<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

For her Complaint against Defendant, Plaintiff alleges the following:

1. This is an action seeking to redress discrimination and retaliation in the workplace brought by Ms. Edit Villalobos against her former employer, the Basis Educational Group, LLC, pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 (as amended), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (as amended), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 1201 (as amended).

2. This Court has subject matter jurisdiction over the federal civil rights claims asserted in this Complaint under 28 U.S.C. §§ 1331, 1343(4), and 42 U.S.C. § 2000e.

3. This Court has personal jurisdiction over Defendant because Defendant was located and doing business in Maricopa County, Arizona at all times material to this Complaint.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

5. Ms. Edit ("Libby") Villalobos is a citizen of the United States of America.

6. Ms. Villalobos is Mexican in ethnicity and ancestry.

7. Basis Educational Group, LLC, is an Arizona limited liability company doing business as a school known as "BASIS Scottsdale" at 10400 North 128th Street in Scottsdale, Arizona.

8. BASIS had at least fifteen employees for each working day in at least twenty weeks this year or last year under 42 U.S.C. § 2000e(b).

9. Ms. Villalobos was employed as the Dean of Students at BASIS Scottsdale at all times material to this Complaint.

10. Ms. Villalobos' work performance was satisfactory to excellent at all times material to this Complaint.

11. Ms. Elana Campbell was the Director of Student Affairs at BASIS Scottsdale and served as Ms. Villalobos' direct supervisor at all times material to this Complaint.

12. Beginning in July 2019, Ms. Campbell created a discriminatory working environment at BASIS Scottsdale by making a series of offensive discriminatory remarks about students, staff (including Ms. Villalobos herself), and parents at the school.

13. For example, in July of 2019, after meeting with an African-American family with a child attending the school, Ms. Campbell exclaimed to Ms. Villalobos that "culturally Africans are angry, hostile and aggressive!"

14. Ms. Campbell also told Ms. Villalobos that the African-American child attending the school mentioned above was "lazy and not that smart."

15. Later that same month, Ms. Campbell ordered Ms. Villalobos not to be in the same room alone with a student who was Middle Eastern in race and Muslim in religion, stating "don't be in a room alone with him; he's a strict Muslim.  He gives me school shooter vibes.  Don't call his parents.  His parents are strict Muslims."

16. On approximately August 1, 2019, a teacher at the school advised Ms. Campbell

2

and Ms. Villalobos that she suffered from Attention Deficit Hyperactive Disorder ("ADHD").

17. Soon after the teacher advised Ms. Campbell and Ms. Villalobos of her condition, Ms. Campbell ordered Ms. Villalobos to "find information" on the teacher so that the school could "get rid" of her.

18. Ms. Villalobos objected to Ms. Campbell's order and told Ms. Campbell that she believed it was both wrong and illegal to "look for" reasons to fault the teacher just because she disclosed a medical problem.

19. When Ms. Campbell subsequently ordered Ms. Villalobos to document an alleged incident of inattention on the part of the teacher, Ms. Villalobos objected to the order because she thought that it might be discriminatory and unlawful.

20. Ms. Campbell then became angry with Ms. Villalobos and took her to the "Head of School" (i.e., the "Principal") at Basis Scottsdale, Ms. Megan Mitrovich, to address the issue.

21. At the meeting with Ms. Mitrovich, Ms. Campbell admitted that she was watching the teacher to see if the teacher was inattentive and should be terminated.

22. Ms. Mitrovitch did not state or suggest that Ms. Campbell's intentions or statements regarding the teacher were in any way inappropriate.

23. Later in August 2019, during an event at the school, Ms. Villalobos greeted the African-American family mentioned in paragraphs 13 and 14 above, and Ms. Campbell became angry and ordered Ms. Villalobos not to speak to the family again.

24. On approximately August 7, 2019, Ms. Campbell also told Ms. Villalobos that she was keeping a "watch list" of "potential terrorists" attending the school, all of whom were Muslim in faith.

25. In September 2019, Ms. Villalobos observed Ms. Campbell monitoring three African-American students on the school's security cameras, explaining that she was trying to "catch them do something wrong" and thought that they were cheating on their school work.

3

26. In September 2019, Ms. Villalobos first attempted to complain directly to Megan Mitrovitch about Ms. Campbell's discriminatory conduct, but was unable to meet with her.
27. Ms. Campbell soon discovered that Ms. Villalobos had attempted to contact Ms. Mitrovitch and ordered her not to contact Ms. Mitrovitch about her concerns again, but instead to exclusively direct any concerns she had to Ms. Campbell.
28. This made Ms. Villalobos fearful of complaining about Ms. Campbell.
29. In September 2019, Ms. Villalobos had to miss work because of a health issue.
30. When Ms. Villalobos returned to work on the next day, Ms. Campbell asked her a series of questions regarding her health issues, which Ms. Campbell had no right to know and violated Ms. Villalobos' right to privacy.
31. Ms. Campbell proceeded to complain to teachers that she was having to do Ms. Villalobos' work because she was out sick.
32. In October 2019, a teacher reported that other students were referring to a Hispanic teacher as an "illegal immigrant."
33. Ms. Villalobos was disturbed by the teacher's report because she was aware that an African-American student attending the school had been subjected to racial slurs by other students.
34. When Ms. Campbell appeared to dismiss the complaint, Ms. Villalobos urged her to take it seriously, to which Ms. Campbell responded by calling Ms. Villalobos an "illegal immigrant."
35. In fact, Ms. Villalobos is a native-born citizen of the United States of America and was insulted by Ms. Campbell's comment.
36. In September 2019, an African-American student claimed that a teacher at the school forcibly removed a comb (a "hair-pick") in his hair that he was wearing in the classroom as an expression of cultural pride.
37. The student also accused the teacher of claiming to the students in his class that Europeans had contributed more to civilization than Africans.
38. In investigating the student's complaints, Ms. Campbell and Ms. Villalobos

4

interviewed other students in the same class to determine if in fact the teacher had either removed the student's hair pick or made the remarks regarding Europeans and Africans, and several students confirmed that in fact the teacher had removed the hair pick and made the remarks.

39. Ms. Villalobos also overheard a telephone conversation (via speakerphone) between Ms. Campbell and the African-American student's mother regarding the teacher.

40. Ms. Campbell later claimed that the mother had threatened her life during the telephone conversation and asked Ms. Villalobos to corroborate her claim.

41. Ms. Villalobos had listened to the conversation, did not hear the mother threaten Ms. Campbell in any way and believed that Ms. Campbell was distorting what the mother actually said.

42. When BASIS later investigated the issue, Ms. Villalobos accurately summarized the conversation between Ms. Campbell and the student's mother and did not recount any threats by either participant in the call.

43. When the investigation was near completion in November 2019, Ms. Campbell learned that Ms. Villalobos had failed to falsely corroborate Ms. Campbell's claim that she had been threatened by the student's parent and actually told Ms. Villalobos to change her statement, which she refused to do.

44. After Ms. Villalobos refused to lie for Ms. Campbell, Ms. Campbell retaliatorily became consistently very angry and disrespectful to Ms. Villalobos at work.

45. On another occasion, Ms. Villalobos (once again) observed Ms. Campbell watching two African-American students on the school's security cameras to "catch them doing something."

46. Ms. Campbell also ordered Ms. Villalobos to watch the students so they could "get rid of them."

47. Based on these facts, in November 2019, Ms. Villalobos (once again) asked to meet with Ms. Mitrovitch so she could privately complain about Ms. Campbell's misconduct, but Ms. Mitrovitch responded to Ms. Villalobos in the presence of Ms. Campbell, and Ms. Villalobos was too intimidated by Ms. Campbell's presence to

proceed with the complaint.

48. In December 2019, Ms. Campbell insultingly insinuated to Ms. Villalobos that an African-American student at the school who had been accepted into an Ivy League college was accepted based on his race rather than his merit.

49. Ms. Campbell also stated that she was going to instruct the student's counselor at the school to write the college urging it to rescind the student's admission because he had "serious character issues."

50. Ms. Campbell has also repeatedly claimed to Ms. Villalobos that Christians are "hypocrites, are "part of a cult," the "church has done so much harm to people," etc.

51. Ms. Villalobos is Christian in faith and was deeply offended by Ms. Campbell's remarks.

52. Ms. Campbell also made other discriminatory remarks similar to the examples summarized above on a weekly and sometimes daily basis.

53. After twice trying to reach out to Megan Mitrovitch to complain of Ms. Campbell's discriminatory misconduct without success, Ms. Villalobos ultimately complained about Ms. Campbell in writing and orally to a BASIS Human Resource professional (Ms. Kelly Berger) in late December 2019 and early January 2020.

54. Although Ms. Berger and her colleagues at BASIS purported to investigate Ms. Villalobos' complaints, they conducted the investigation in bad faith by discounting and ignoring the substantial evidence supporting her claims.

55. Moreover, notwithstanding Ms. Villalobos' complaints, Ms. Campbell's discrimination against Ms. Villalobos continued in the form of (among other things) retaliatory harassment.

56. For example, after Ms. Villalobos opposed Ms. Campbell's discriminatory orders and complained of her harassment, Ms. Campbell started yelling at her in the workplace, slamming doors in her face, taking away her job duties, and unfairly criticizing her work performance in front of other employees.

57. Moreover, soon most of the supervisory and non-supervisory employees at the school virtually stopped speaking to Ms. Villalobos and were either unwilling or

6

reluctant to work with her.

58. These circumstances combined to make it much more difficult for Ms. Villalobos to do her job, and she soon became isolated, fearful and demoralized at work.

59. Ms. Campbell also retaliatorily accused Ms. Villalobos of insubordination and refusing to collaborate with her, which ultimately resulted in Ms. Villalobos being unjustly reprimanded for misconduct.

60. In contrast to BASIS's treatment of Ms. Villalobos, it never disciplined Ms. Campbell for her misconduct in any way.

61. After Ms. Villalobos complained to Human Resources, a student informed her that several students had referred to her behind her back as a "wetback."

62. Although Ms. Campbell was in the same room as the students and was within earshot of the remark, she did not reprimand the students or ask them to stop using that language at school.

63. After Ms. Villalobos initially complained to BASIS Human Resources in December 2019 and January 2020, she reported continuing acts of discrimination and retaliation to Human Resources, including the incident described in paragraph 61 above.

64. Instead of investigating Ms. Villalobos' additional complaints in good faith, BASIS accused Ms. Villalobos of being negative, dwelling on the past and refusing to move forward.

65. Shunned, ridiculed and falsely accused, Ms. Villalobos was ultimately forced to resign her employment with BASIS in April 2020.

66. As a proximate result of the discriminatory harassment and retaliation summarized above, Ms. Villalobos has suffered anxiety, humiliation, depression and lost wages.

67. Based on the foregoing misconduct, Ms. Villalobos filed a timely Charge of Discrimination against BASIS with the United States Equal Employment Opportunity Commission (the "EEOC") on January 15, 2020. See attached Exhibit A.

68. In accordance with her request, Ms. Villalobos received a right to sue letter from the

EEOC regarding her Charge of Discrimination in early February 2020 and filed this civil action within ninety days of her receipt of that letter. See attached Exhibit B.

69. Pursuant to Rule 38 (b) of Federal Rules of Civil Procedure, Ms. Villalobos hereby exercises her right to a trial by a jury of her peers.

Based on the forgoing, Ms. Villalobos respectfully requests the Court to:

I. Issue a judgment declaring that the conduct of Defendant as described above violated Ms. Villalobos' rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981 (as amended), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (as amended), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 (as amended);

II. Issue preliminary and permanent injunctions against the Defendant enjoining it from committing similar unlawful acts in the future;

III. Issue a judgment awarding Ms. Villalobos back-pay and front-pay against Defendant in amounts to be determined at trial;

IV. Issue a judgment awarding Ms. Villalobos nominal, compensatory and punitive damages against Defendant in amounts to be determined by the finder-of-fact at trial;

V. Issue a judgment awarding Ms. Villalobos her reasonable costs and attorney fees against Defendant pursuant to 42 U.S.C. §§ 1988 and 2000e and any other applicable law; and

VI. Issue a judgment awarding Ms. Villalobos all other relief that is just, proper and equitable (including reinstatement) against Defendant under the circumstances.

Respectfully submitted this 30th day of April 2020.

**MONTOYA, LUCERO & PASTOR, P.A.**



Stephen Montoya
Attorney for Plaintiff

I hereby certify that on April 30, 2020, I electronically transmitted the foregoing document to the Clerk of Court using the CM/ECF System for filing.

_____
Stephen Montoya